IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

---

**CLAIMS COMPENSATION BUREAU, LLC**          :
**1100 East Hector Street**          :
**Suite 250**          :
**Conshohocken, PA 19428**          :
          :          Civil Action No.  2:21-cv-104
                    **Plaintiff,**          :
          :
          :
     **v.**          :
          :
**SLEEP NUMBER CORPORATION**          :
          :
**SERVE:**     **Corporation Service Company**          :
          **100 Shockoe Slip Fl 2**          :
          **Richmond, VA 23219**          :
          :
          :
                    **Defendant.**          :

---

## VERIFIED COMPLAINT

Plaintiff, Claims Compensation Bureau, LLC ("CCB"), as assignee of Portfolio Recovery

Associates, LLC ("PRA"), brings this Verified Complaint and asserts the following causes of

action against defendant, Sleep Number Corporation, formerly known as Select Comfort

Corporation, and hereinafter referred to as "Defendant."

## I.     PRELIMINARY STATEMENT

1.     CCB, as assignee of PRA, brings this action for a declaratory judgment,

preliminary and permanent injunctions, compensatory damages, and related relief to prevent

Defendant from continuing to cause substantial, immediate and irreparable harm to CCB by its

ongoing breaches of a Bill of Sale and Assignment of Claims Agreement (the "Claims

Agreement") between the parties.

2.     Pursuant to the Claims Agreement, a copy of which is attached hereto as Exhibit 1, PRA paid $810,000 to Defendant to purchase all of Defendant's rights, claims and interests in a class action lawsuit pending in the United States District Court for the Eastern District of New York, captioned *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.) (the "PCI Litigation").

3.     The PCI Litigation is one of the largest class action lawsuits in history, with the certified class consisting of all merchants who, like Defendant, accepted Visa or Master Card credit cards during the class period, from January 1, 2004 through January 25, 2019.  The merchants claim that they paid excessive fees on credit card transactions because Visa and MasterCard, individually, and together with their respective member banks, violated the antitrust laws.

4.     In addition to purchasing Defendant's interest in the PCI Litigation, PRA purchased all of the data and documentation relating to Defendant's credit card transactions during the class period, materials that are necessary for PRA to file a claim in the PCI Litigation and obtain its share of any settlement or recovery as Defendant's assignee.  *See* Claims Agr., § 1.

5.     After a definitive settlement agreement was approved by the District Court in the PCI Litigation in December 2019, PRA requested that Defendant provide it with updated data and documentation for credit card transactions that occurred during the class period after the execution of the Claims Agreement.

6.     Defendant refused, contending that the claims purchased by PRA did not include claims arising from credit card transactions that occurred after the Claims Agreement was executed.

7.      Defendant's position is belied by the express terms of the Claims Agreement, pursuant to which PRA purchased *the entirety* of Defendant's interest in the PCI Litigation, including "any actual *or potential claims* . . . based on transactions . . . to which Seller is, has been, and/or *may be* a party, *whether or not identified or specifically identified or identifiable as of the date hereof, and whether or not now existing or hereafter arising*." *See* Claims Agr., § C (emphasis added).

8.      Although the language of the Claims Agreement could not be clearer, Defendant has yet to alter its position, to acknowledge the ownership rights of PRA or its assignee CCB, or to produce the additional data and documentation.

9.      As a result, CCB is suffering substantial, immediate and irreparable injuries. Among other harms, CCB is unable to assemble and ultimately file claims in the PCI Litigation for overcharges on credit card transactions occurring during the class period after the execution of the Claims Agreement; these claims are valued at approximately $1.4 million.

10.      Defendant, moreover, has stated in writing that it is actively seeking to sell such claims to a third party, which would not only violate CCB's rights as the owner of the claims, but mislead any third party who purchases them in the false belief that they are Defendant's to sell.

11.      Indeed, Defendant has even offered to sell such claims to CCB – *again* – for an additional purchase price, thus revealing that Defendant's true purpose is to obtain an additional payment from CCB for something that CCB already owns.

12.      To remedy Defendant's ongoing violations of the Claims Agreement, CCB seeks and is entitled to, among other relief, (a) a declaratory judgment confirming that it is the sole and rightful owner of all of Defendant's claims in the PCI Litigation, including those arising from credit card transactions post-dating the Claims Agreement; (b) a preliminary and permanent

injunction to require Defendant to provide all of the data and documents relating to such claims, and to prohibit Defendant from selling such claims to a third party; and (c) compensatory damages.

## II.  **PARTIES**

13.     Plaintiff, CCB, is a limited liability corporation organized and existing under Delaware law with its principal place of business at 1100 East Hector Street, Suite 250, Conshohocken, PA 19428.

14.     CCB brings this action as the assignee of PRA, which assigned its interest in the Claims Agreement to CCB pursuant to a Transfer and Novation Agreement dated August 25, 2020, a copy of which is attached hereto as Exhibit 2.

15.     PRA is a limited liability corporation organized and existing under Delaware law with its principal place of business at 120 Corporate Boulevard, Norfolk VA 23502.

16.     Both CCB and PRA are wholly owned by PRA Group, Inc. ("PRA Group"), a corporation organized and existing under Delaware law with its principal place of business at 120 Corporate Boulevard, Norfolk, VA 23502.

17.     Defendant is a corporation organized and existing under Minnesota law with its principal place of business at 9800 59th Avenue North, Minneapolis, MN 55442.

18.     At the time Defendant entered into the Claims Agreement, it was operating as Select Comfort Corporation.  Defendant has since changed its name, is currently operating as Sleep Number Corporation, and remains bound by the Claims Agreement.

## III.   JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

20.     This Court has personal jurisdiction over Defendant, and venue over this dispute pursuant to 28 U.S.C. § 1391(b)(1) and (2), because (a) Defendant regularly does business in this district; (b) a substantial part of the events or omissions giving rise to the claims occurred in this district; and (c) the Claims Agreement contains a choice-of-forum clause, pursuant to which the parties agreed that:

> ANY LEGAL ACTIONS BETWEEN OR AMONG BUYER AND SELLER REGARDING THIS AGREEMENT OR THE CLAIMS SHALL BE BROUGHT EXCLUSIVELY IN THE STATE OR FEDERAL COURTS IN THE CITY OF NORFOLK IN THE COMMONWEALTH OF VIRGINIA, AND EACH OF THE PARTIES HEREBY CONSENTS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS (AND OF THE APPROPRIATE APPELLATE COURTS) IN ANY SUCH ACTION AND WAIVES ANY OBJECTION TO VENUE LAID THEREIN.

*See* Claims Agr. § 7(g) (emphasis in original).

## IV.   FACTS

### A.   Background

21.     PRA Group (formerly Portfolio Recovery Associates, Inc.) was founded in 1996 in Norfolk, Virginia.

22.     PRA Group later formed PRA as a wholly owned subsidiary.

23.     A principal focus of PRA's business is to purchase charged off accounts from lenders and other creditors and to collect on such accounts by providing the borrowers with affordable plans and payment options.

24.     PRA Group acquired CCB in 2010 and is its sole and managing member.

25.     CCB is in the business of providing claims filing services to class members and putative class members in securities-related class action litigation, antitrust-related class action litigation, and other class action litigation.

26.     CCB's business also includes (i) purchasing claims from class members and putative class members in securities-related class action litigation, antitrust-related class action litigation, and other class action litigation, and (ii) selling such purchased claims to third parties when appropriate.

27.     When CCB purchases a claim from a class member or putative class member, the seller of the claim obtains the benefit of an immediate, substantial cash payment in exchange for a claim that otherwise may take years to be resolved and could yield little to no recovery.

28.     While CCB hopes to obtain a return on its investment, it assumes all the risk associated with the class action claims that it purchases, including the possibility that the claim will result in either no recovery to CCB or a recovery below the amount that CCB paid for the claim.  CCB also evaluates, periodically, whether to hold the claim or sell it.

**B.      The Purchase of Defendant's Interest in the PCI Litigation**

29.     In or about October 2013, Defendant approached CCB about the possibility of selling its interest in the PCI Litigation.

30.     The PCI Litigation, as alleged above, is one of the largest class action lawsuits in history, with the certified class consisting of all merchants who have accepted Visa or MasterCard credit cards during the class period.  The merchants claim that they paid excessive fees on credit card transactions because Visa and MasterCard, individually, and together with their respective member banks, violated the antitrust laws.

31.     Defendant is the parent corporation of Select Comfort Retail Corporation ("SCRC"), a Minnesota corporation that does business as "Sleep Number," and of Select Comfort SC Corporation ("SCSCC"), a Minnesota corporation that does business as "Comfortaire."

32.     Both SCRC and SCSCC are in the business of selling, at wholesale and retail, mattresses and other sleep-related products and accessories.  The two companies are "Merchants" within the definition of the certified class in the PCI Litigation because they accepted Visa and Master Card credit cards during the class period.

33.     As the parent corporation of SCRC and SCSCC, Defendant had the right and authority to sell the claims of SCRC and SCSCC in the PCI Litigation, a fact that Defendant specifically represented in the Claims Agreement.  *See* Claims Agr. § B.

34.     After several weeks of discussion and negotiation, the Claims Agreement was executed on December 24, 2013.

35.     The parties to the Claims Agreement were Defendant, as Seller, and PRA, as Buyer.

36.     As alleged above, PRA and CCB are affiliated companies and each is wholly owned by PRA Group.

37.     Pursuant to the Claims Agreement, PRA purchased all of Defendant's rights, claims and interests in the PCI Litigation for a purchase price of $810,000, which PRA paid in a lump sum immediately upon execution of the Claims Agreement.  *See* Claims Agr. §§ 1, 4.

C.   **The Claims Purchased by PRA Included Claims Arising**
     **From Both Past and Future Credit Card Transactions**

38.   Under Section 1 of the Claims Agreement, Defendant agreed to "sell[], transfer[] and assign[] to [PRA], its successors and assigns, all right, title and interest in and to the Claims."

39.   The term Claims was broadly defined to include both existing claims based on past credit card transactions, and prospective claims based on future transactions.  As set forth in Section C:

> [A]ny actual *or potential* claims, causes of action, choses in action, and rights of [Defendant] in respect of [the PCI Litigation] based on transactions or relationships to which [Defendant] is, has been and/or *may be* party, *whether or not specifically identified or identifiable as of the date hereof*, and whether or not now existing *or hereafter accruing or arising*, including without limitation, any subsequent, renegotiated, modified or otherwise refiled litigation and/or settlement arising out of the same or similar class action proceedings, including any and all rights arising out of any rejection, dismissal, modification or transfer of the [PCI Litigation], and any filings of similar claims in another other jurisdiction, are referred to herein collectively as the "Claims."

40.   By the Claims Agreement's express terms, therefore, the Claims that were purchased by PRA were <u>not</u> limited to claims arising from credit card transactions that occurred prior to the execution of the Claims Agreement.  To the contrary, the Claims included "any actual *or potential* claims . . . based on transactions . . . to which [Defendant] is, has been, and/or *may be* a party, *whether or not identified or specifically identified or identifiable as of the date hereof, and whether or not now existing or hereafter arising*."  *Id.* (emphasis added).

41.   Moreover, the Claims Agreement included only a single exception to the definition of Claims, which Defendant requested and PRA accepted:  "[F]or the avoidance of doubt 'Claims' shall exclude any right, title or interest which [Defendant] may acquire after the date of this Agreement by virtue of a transaction which results in the acquisition [by Defendant]

of another entity or the rights of another entity which may have its own Claims in the [PCI Litigation]." *Id.* § 1.

42.     Thus, while Defendant requested, and obtained, a carve-out to the definition for claims arising in the future by virtue of Defendant's acquisition of a third party, Defendant did <u>not</u> request, and the Claims Agreement does <u>not</u> contain, any exception for claims arising in the future by virtue of credit card transactions occurring after the execution of the Claims Agreement.

43.     Under the Claims Agreement, PRA also purchased the "Transaction Data" relating to the Claims, which was defined as "all of [Defendant's] right, title and interest in and to all trade data, transaction date, invoices, purchase orders, sales orders, proofs of delivery, agreements, instruments and other documents and data evidencing, or relating or referred to in, other otherwise in respect of, the Claims." *Id.*

44.     Defendant represented in the Claims Agreement that it had already furnished PRA with all of the Transaction Data relating to Claims arising from credit card transactions that pre-dated the execution of the Claims Agreement. *Id.* § 3(i).

45.     However, because the Claims Agreement specifically contemplated that Claims would also arise from credit card transactions occurring in the future, Defendant separately agreed that "[Defendant] shall ***continue to promptly provide the Transaction Data*** to [PRA] upon receipt or upon request by [PRA] ***until such time as all Claims have been satisfied in [PRA's] sole discretion.***" *Id.* (emphasis added).

D.     <u>The Settlement of the PCI Litigation</u>

46.     On December 13, 2013, the District Court in the PCI Litigation certified the settlement class and formally approved a Definitive Class Settlement Agreement.

47.     Subsequently, several class members who had objected to the Definitive Settlement Agreement filed an appeal to the Court of Appeals for the Second Circuit.

48.     On June 30, 2016, the Court of Appeals vacated the District court's order approving the Definitive Class Settlement Agreement.

49.     Thereafter, the class representatives filed a Third Consolidated Amended Class Action Complaint, and the parties conducted substantial discovery.

50.     On or about September 18, 2018, the class representatives and defendants executed a Superseding and Amended Definitive Class Settlement Agreement (the "Superseding Agreement").

51.     On December 13, 2019, the District Court approved the Superseding Agreement and certified the settlement class.

52.     In the Superseding Agreement, the class period is defined as the period from January 1, 2004 through January 25, 2019, and the certified class includes "[a]ll persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time from January 1, 2004 to January 25, 2019."

53.     Several class members who objected to the Superseding Agreement have filed an appeal of the District Court's order approving the Superseding Agreement.  This appeal is currently pending.

**E.      Select Comfort Violates the Claims Agreement**

54.     After the District Court approved the Superseding Agreement, PRA contacted Defendant and requested it to furnish the Transaction Data relating to credit card transactions occurring in the period between December 24, 2013, when the Claims Agreement was executed, and January 25, 2019, the end of the class period.

55.     PRA needed this additional Transaction Data so that it could compile and ultimately file a claim in the PCI Litigation for a recovery encompassing all of the credit card transactions for SCRC and SCSCC occurring within the class period.

56.     PRA also needed this additional Transaction Data so that it could evaluate the entire claim and the possibility of selling it to a third party.

57.     By PRA's estimation, the value of its claim relating to credit card transactions occurring between the execution of the Claims Agreement and the end of the class period is approximately $1.4 million.

58.     On November 13, 2019, PRA received a letter from an attorney for Defendant stating that Defendant would not honor the request for the updated Transaction Data because the interest that PRA purchased, Defendant contended, was limited to claims arising from credit card transactions occurring through the execution of the Claims Agreement, and did not include claims arising from transactions occurring between that date and the end of the class period.

59.     In the November 13, 2019 letter, a copy of which is attached hereto as Exhibit 3, Defendant also stated:

> [Defendant] has been contacted by several entities inquiring about purchasing Select Comfort's remaining interests in its claim.  If [PRA] would like to discuss purchasing those interests, Sleep Number is open to those discussions. . . . If I do not hear from you by November 27, 2019, [Defendant] will understand that [PRA] does not wish to purchase [Defendant's] interest in any recovery resulting from transaction post-dating December 24, 2013.

60.     The November 13, 2019 letter, and the position that Defendant has continued to take since that time, is groundless, completely at odds with the language of the Claims Agreement, and an apparent attempt to extort an additional payment from PRA above and beyond the paid-in-full purchase price of $810,000.

61.     After receiving this letter, PRA, through its attorney, advised Defendant that its position was meritless and demanded that Defendant furnish the updated Transaction Data.

62.     Defendant refused.

63.     Despite receiving several follow-up demands from PRA's attorney, Defendant still has not furnished the updated Transaction Data, acknowledged PRA's ownership rights, or withdrawn its threat to sell claims that belong to CCB.

64.     As a result, CCB, as PRA's assignee, is suffering substantial, immediate and irreparable harm because it is unable to prepare and file a claim in the PCI Litigation to recover overcharges on credit card transactions for the period from December 24, 2013 through January 25, 2019.

65.     Moreover, Defendant's threat to sell such claims to a third party not only violates CCB's ownership rights, but such sale would mislead any third party who purchases the claims with the false belief that they are Select Comfort's to sell.

66.     CCB is also suffering financial harm because the fair market value of the interest that PRA purchased has been substantially reduced by Defendant's misconduct.  CCB typically considers selling the class action claims that it purchases, but it cannot entertain offers for its interest in the PCI Litigation because it would have to disclose to prospective purchasers Defendant's position, baseless as it is.  No firm will purchase CCB's interest for fair value given the "cloud on title" that Defendant has unlawfully created.

## V.   CLAIMS FOR RELIEF

### Count One

### Claim for Breach of The Claims Agreement

67.     CCB repeats and incorporates by reference all of the foregoing allegations, as if stated fully again.

68.     The Claims Agreement is a valid and enforceable contract.

69.     Pursuant to the Claims Agreement, PRA purchased the entirety of Defendant's interest in the PCI Litigation, which included claims arising from credit card transactions occurring both before and after the execution of the Claims Agreement.

70.     PRA also purchased the Transaction Data relating to credit card transactions occurring both before and after the execution of the Claims Agreement.

71.     Defendant agreed to furnish Transaction Data "upon request by [PRA]." *See* Claims Agr., § 3(i).

72.     By refusing to furnish Transaction Data for credit card transactions occurring between December 24, 2013 and January 25, 2019, Defendant has breached the Claims Agreement.

73.     By taking the unfounded position that the claims purchased by PRA do not include claims arising from credit card transactions occurring after December 24, 2013, Defendant has breached the Claims Agreement.

74.     By entertaining offers from third parties to purchase claims arising from credit card transactions occurring after December 24, 2013, Defendant has breached the Claims Agreement and violated CCB's ownership rights.

75.     As a result of Defendant's breaches of the Claims Agreement, CCB is suffering immediate and significant harm, including, but not limited to, (a) its inability to compile and file claims in the PCI Litigation for credit card transactions occurring between December 24, 2013 and January 25, 2019; (b) the decrease in the fair value of the interest that it purchased; and (c) the inability to consider selling the asset to a third party.

WHEREFORE, CCB respectfully requests judgment in its favor and against Defendant for compensatory damages in an amount to be determined at trial but exceeding $75,000, prejudgment interest, attorney's fees and litigation expenses pursuant to Section 7(d) of the Claims Agreement, costs, and such additional relief as the Court deems just.

## Count Two

## Claim for Declaratory Judgment

76.     CCB repeats and incorporates by reference all of the foregoing allegations, as if set forth fully again.

77.     Defendant has contended, in letters from its attorney, that the interest purchased by PRA under the Claims Agreement does not include claims arising from credit card transactions occurring after December 24, 2013.

78.     Based on this contention, Defendant has refused to furnish CCB with Transaction Data for credit card transactions occurring after December 24, 2013, despite numerous written demands for such materials from counsel for CCB.

79.     Although Defendant's position is groundless, an actual case or controversy exists between the parties, within the meaning of the Virginia Declaratory Judgment Act, Virginia Code § 8.01-184, *et seq.*, concerning the scope of the claims that PRA purchased from Defendant under the Claims Agreement.

80.    A justiciable controversy exists because CCB has made a demand for updated Transaction Data and Defendant has refused, while also threatening to sell to a third party the portion of CCB's interest arising from credit card transactions occurring after December 24, 2013.

WHEREFORE, CCB respectfully requests judgment in its favor and against Defendant for the following relief:

a.    declaration that under the Claims Agreement:

i.    CCB is the sole and lawful owner of all claims arising from credit card transactions by Defendant, SCRC and/or SCSCC from January 1, 2004 through January 25, 2019, and during any other class period that may be established in the PCI Litigation;

ii.    Defendant has no rights or interests in any claims arising from credit card transactions by Defendant, SCRC and/or SCSCC from January 1, 2004 through January 25, 2019, and during any other class period that may be established in the PCI Litigation;

iii.    the claims purchased by PRA include claims arising from credit card transactions occurring both before and after execution of the Claims Agreement; and

iv.    the Transaction Data purchased by PRA includes data and documents relating to credit card transactions occurring both before and after execution of the Claims Agreement;

b.    attorney's fees and litigation expenses pursuant to Section 7(d) of the Claims Agreement; and

c.    such additional relief as the Court deems just.

## Count Three

### Claims for Preliminary and Permanent Injunctions

81.     CCB repeats and incorporates by reference all of the foregoing allegations, as if set forth fully again.

82.     CCB is suffering immediate and irreparable harm because, among other injuries:

a.      CCB cannot prepare and ultimately file a claim in the PCI Litigation for a recovery based on credit card transactions between December 24, 2013 and the end of the class period;

b.      Defendant is threatening to sell to a third party CCB's claims arising from credit card transactions occurring between December 24, 2013 and the end of the class period; and

c.      CCB cannot market or sell its interest in the PCI Litigation because of the "cloud on title" caused by Defendant's misconduct.

83.     CCB has no adequate remedy at law.

84.     If the Court grants injunctive relief to CCB, Defendant will suffer no injury because it has no remaining rights or claims in the PCI Litigation.

85.     By contrast, if the Court does not grant CCB injunctive relief, CCB will continue to suffer the immediate and irreparable harms described above.

86.     The public interest weighs strongly in favor of injunctive relief because, among other reasons, if Defendant makes good on its threat to sell to a third party CCB's claims arising from credit card transactions occurring after December 24, 2013, that sale would not only violate CCB's ownership rights, but mislead any third party who purchases such claims in the false belief that they are Defendant's to sell.

WHEREFORE, CCB respectfully requests judgment in its favor and against Defendant for the following relief:

      a.    a preliminary and permanent injunction:

           i.    requiring Defendant to furnish CCB immediately with all Transaction Data requested by CCB relating to credit card transactions occurring during the class period in the PCI Litigation, including but not limited to all Transaction Data relating to transactions occurring between December 24, 2013 and January 25, 2019;

           ii.    prohibiting Defendant from interfering with CCB's rights as the exclusive owner of all claims arising from credit card transactions by Defendant, SCRC and/or SCSCC from January 1, 2004 through January 25, 2019, and during any other class period that may be established in the PCI Litigation; and

           iii.    prohibiting Defendant from selling or purporting to sell any claims or interest in the PCI Litigation to any third party;

      b.    attorney's fees and litigation expenses pursuant to Section 7(d) of the Claims Agreement; and

      c.    such additional relief as the Court deems just.

Respectfully submitted,

**CLAIMS COMPENSATOIN BUREAU, LLC
as assignee of Portfolio Recovery Associates,
LLC**

*By Counsel*

*/s/ Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
Micaylee A. Noreen (VSB No. 92433)
McGuireWoods LLP
101 West Main Street, Suite 9000
Norfolk, VA 23510

Tel:  (757) 640-3716
Fax: (757) 640-3730
rmcfarland@mcguirewoods.com
mnoreen@mcguirewoods.com

*Pro hac vice* admission pending:

Peter J. Weidman
Weidman Law, LLC
600 West Germantown Pike
Suite 400
Plymouth Meeting, PA 19462
Tel:  (610) 940-1686
Fax:  (610) 743-8532
pweidman@weidmanlaw.com

*Counsel for Claims Compensation Bureau, LLC as
assignee of Portfolio Recovery Associates, LLC*

## **VERIFICATION**

COMMONWEALTH OF VIRGINIA
COUNTY OF HENRICO, to wit;

Before me, the undersigned notary public, in and for the Commonwealth of Virginia, appeared Mark L. Schneider, as an authorized representative of Claims Compensation Bureau, LLC, as assignee of Portfolio Recovery Associates, LLC, who stated under oath as follows:

1.     To the best of my belief, the factual allegations contained in the preceding pleading are true and correct.

_____
Mark L. Schneider

Subscribed and sworn to before me this  17  day of February, 2021.

_____
Notary Public

My Commission Expires: 08/31/2023
Registration Number: 7034934

140778644_2